CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

DEC 0 1 2008

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| WILLIAM A. BRENNAN, III, <br> Petitioner | Civil Action No. 7:02CR00059 |
| v. | MEMORANDUM OPINION |
| UNITED STATES OF AMERICA, <br> Respondent | By: Samuel G. Wilson <br> United States District Judge |

This is a motion pursuant to 28 U.S.C. § 2255 by William A. Brennan, III claiming that his court-appointed counsel rendered ineffective assistance in the selection of issues in the appeal of his supervised release revocation. The court denies his motion because Brennan cannot satisfy either the performance or prejudice prong of Strickland v. Washington, 466 U.S. 668 (1984).

I.

The Court of Appeals for the Fourth Circuit's opinion affirming the revocation of Brennan's supervised release sets forth the facts and procedural history of this case, United States v. Brennan, No. 07-4730 (4th Cir. July 22, 2008), and this court will not belabor them here. It is sufficient to state that in 2002 the court sentenced Brennan to concurrent prison terms of 20 months for conspiracy to defraud the United States and interstate transportation of stolen goods and imposed concurrent three-year terms of supervised release. The court's judgment order included a mandatory condition of supervised release that "the defendant not commit another Federal, State, or local crime during the term of supervision." On June 7, 2005, one year after Brennan was released from prison, West Virginia authorities arrested him for the June 6 murder of his wife, Lisa Brennan. Brennan's probation officer immediately filed a supervised release violation report recommending that the court revoke Brennan's supervised release because

Brennan had violated a mandatory condition of release that he not commit another crime. The revocation petition classified Brennan's violation as a grade A violation, and in light of his category one criminal history, calculated his advisory guideline range to be 12 to 18 months.

The court appointed counsel to represent Brennan, but he insisted on proceeding pro se, and the court directed counsel to remain in stand-by capacity. Brennan moved to continue his supervised release revocation hearing because the trial of the West Virginia homicide charge had resulted in a hung jury and had not been retried. The court denied the motion and heard the evidence concerning Brennan's violation. At the conclusion of the evidence, the court found:

> Lisa Brennan was the victim of an unlawful felonious homicide. The evidence presented . . . is not sufficient for the Court to determine whether that unlawful felonious homicide was first degree murder, second degree murder or involuntarily manslaughter. Nevertheless, she was the victim of an unlawful felonious homicide. The likely cause of death was blunt force head trauma caused by acceleration and deceleration. Essentially, she was shaken to death.
>
> William Brennan was a principal or accessory to the unlawful felonious homicide. In reaching that conclusion, I look to the following facts which I find more likely true than not.
>
> First, Brennan previously had been abusive and cruel to Lisa as exemplified by the incident where . . . [Brennan] sprayed [Lisa] with a Steam Genie . . . .
>
> Second, Brennan showed little emotion in content or intonation when dealing with law enforcement officers under circumstances that some emotion would be expected from a person who had just suffered a grievous loss. Indeed, even the dialogue in the 9-1-1 call lacks any hint of the kind of emotion I would expect . . . .
>
> Third, nothing remotely suggested that his wife might be in the trunk of the car. Yet he looked there. Obviously, this is a highly unusual place to look in the absence of some indicia that he should be looking for his wife in the trunk.
>
> I have no hesitancy in concluding that he knew she was there and was not

2

looking for her. The search was a charade or ruse. Mr. Brennan, either assisted or unassisted, put her in that trunk.

(J.A. 179-81.)

The court concluded that Brennan had committed a crime in violation of his conditions of supervised release and that the recommended sentencing range of 12-18 months was inadequate. Accordingly, the court imposed the statutory maximum of two consecutive twenty-four month terms. See 18 U.S.C.A. § 3583(e). Brennan appealed and requested court-appointed counsel, and the Court of Appeals appointed the attorney who acted as stand-by counsel at trial.[1] The Court of Appeals affirmed, and Brennan filed his current 2255 motion claiming that his court-appointed counsel rendered ineffective assistance on appeal in the selection of issues.

## II.

Brennan raises nine issues he claims counsel was ineffective for not raising on appeal. Most of them are convoluted, hard to follow and, to the extent discernible, frivolous. To the extent they are discernible, his claims fail because they meet neither of Strickland's prongs.

In Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000), the Fourth Circuit articulated the legal standards that apply to a claim that appellate counsel was ineffective in failing to pursue a claim on direct appeal:

---

[1]Counsel raised the following issues on appeal: (1) whether the district court erred as a matter of law by overruling Brennan's motion to dismiss for lack of jurisdiction; (2) whether the district court abused its discretion by denying Brennan's request for a continuance; (3) whether the district court's conclusory finding that Brennan might have been an accessory in his wife's homicide violates Brennan's right to due process; (4) whether the district court's revocation judgment should be vacated for insufficient evidence and false testimony; (5) whether, even assuming, arguendo, the evidence was sufficient to convict Brennan of violating the terms of his supervised release, the district court's imposition of a 48 month sentence was erroneous as a matter of law.

3

The Sixth Amendment requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. In addition, case law requires that to satisfy the right, the assistance must be effective. See Strickland v. Washington, 466 U.S. 668, 686 (1984). The right to effective assistance of counsel extends to the direct appeal of a criminal conviction. See Evitts v. Lucey, 469 U.S. 387, 396 (1985).

In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate (1) that his "counsel's representation fell below an objective standard of reasonableness" in light of the prevailing professional norms, Strickland, 466 U.S. at 688, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; see Smith v. Robbins, 528 U.S. 259, 285 (2000) (holding that habeas applicant must demonstrate that "counsel was objectively unreasonable" in failing to file a merits brief addressing a nonfrivolous issue and that there is "a reasonable probability that, but for his counsel's unreasonable failure . . ., he would have prevailed on his appeal").

In applying this test to claims of ineffective assistance of counsel on appeal, however, reviewing courts must accord appellate counsel the "presumption that he decided which issues were most likely to afford relief on appeal." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir.1993). Counsel is not obligated to assert all nonfrivolous issues on appeal, as "[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." Jones v. Barnes, 463 U.S. 745, 752 (1983); see also Smith v. South Carolina, 882 F.2d 895, 899 (4th Cir.1989). Indeed, "'[w]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting Jones, 463 U.S. at 751); see also Smith, 882 F.2d at 899 (counsel's failure to raise a weak constitutional claim may constitute an acceptable strategic decision designed "to avoid diverting the appellate court's attention from what [counsel] felt were stronger claims"). Although recognizing that "[n]otwithstanding Barnes, it is still possible to bring a Strickland claim based on counsel's failure to raise a particular claim" on direct appeal, the Supreme Court has recently reiterated that "it [will be] difficult to demonstrate that counsel was incompetent." Smith v. Robbins, 528 U.S. at 288. "'Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'" Id. (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir.1986)).

4

Id. at 164. With these precepts in mind, the Court turns to the issues Brennan claims counsel should have raised on appeal.

**A.**

As best the court can discern, for his first claim Brennan complains that the court belatedly understood, to his prejudice, that he wanted to represent himself. Belatedly or not, the Court understood Brennan wanted to represent himself and permitted him to do so. The claim is frivolous.

**B.**

For his second claim, liberally construed, Brennan complains that the court permitted him to represent himself without ascertaining that his waiver of counsel was a properly informed decision. Brennan correctly notes that the court did not conduct a searching inquiry on the record concerning his decision to represent himself. The fact that Brennan is raising the claim demonstrates the importance of ensuring that the record is clear. Nevertheless, because Brennan would have been unable to satisfy all three requirements of the plain error rule had he raised the issue on appeal, the court concludes that appellate counsel did not perform deficiently in not raising it and that even had he done so there is not a reasonable probability that the outcome of the appeal would have been different. Accordingly, the court dismisses the claim.

An accused has a constitutional right to waive counsel and to conduct his own defense, Faretta v. California, 422 U.S. 806, 819-20 (1975), but the court should assure itself that the defendant's waiver of his right to counsel is knowing, voluntary and intelligent. Id. at 835. However, when a defendant raises an argument for the first time on appeal, as would have been the case had Brennan raised the issue in the Court of Appeals following the revocation of his

5

supervised release, the standard of review is plain-error. Under plain-error review, authorized by Fed. R. Crim. P. 52(b), Federal appellate courts have only a limited power to correct errors that were forfeited because they were not timely raised in the district court. As the Fourth Circuit has noted,

> Before an appellate court can notice and correct an error not raised at trial, the defendant must show that there is "(1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."

United States v. Beasley, 495 F.3d 142, 148 (4th Cir. 2007) (citing Johnson v. United States, 520 U.S. 461, 467 (1997)). This court's failure to conduct a searching inquiry on the record concerning the defendant's decision to represent himself at a supervised release revocation hearing after counsel has been appointed, has prepared, remains on standby throughout the hearing, is seated with and freely converses with the defendant, fails to satisfy the requirements for plain-error review.

By its own terms the Sixth Amendment applies only in "criminal prosecutions," U.S. Const. amend. VI, and the Supreme Court has held that revocation proceedings are not criminal prosecutions for Sixth Amendment purposes. Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (probation revocation); Morrissey v. Brewer, 408 U.S. 471, 480 (1972) (parole revocation). Although there is a statutory right to representation during a revocation proceeding, 18 U.S.C. § 3006A(a)(1)(E) and under certain circumstances a due process right, Gagnon, 411 U.S. at 782, the Supreme Court has not held that a defendant has a Sixth Amendment right to counsel during a revocation hearing. Therefore, although it would have been unquestionably preferable for the court to have conducted its inquiry on the record, it is far from plain that its failure to do so is

controlled by the Sixth Amendment line of cases applicable to trial waivers. For purposes of plain-error review, "'[p]lain' is synonymous with 'clear' or, equivalently, 'obvious.'" United States v. Olano, 507 U.S. 725, 734 (1993) (citations omitted). More fundamentally, even if the Court of Appeals considered it to be error, it likely would have exercised its discretion not to recognize the error, concluding, as this court concluded before proceeding, Brennan fully comprehended the consequences of his actions.[2]

United States v. Crenshaw, 140 Fed. Appx.. 836 (11th Cir. 2005), cert. denied, 547 U.S. 1005 (2006) is instructive. In Crenshaw the judge initially appointed counsel to represent Crenshaw. Crenshaw's counsel informed the court at Crenshaw's revocation hearing that Crenshaw did not wish to be represented by his appointed counsel, and the court did not appoint alternate counsel. Crenshaw raised a Sixth Amendment claim for the first time on appeal, and the Eleventh Circuit reviewed it under a plain-error analysis. The court noted that neither the Eleventh Circuit nor the Supreme Court has "concluded that the procedure outlined in Faretta should be applied to proceedings involving the revocation of supervised release [because] . . . . [A] person facing the revocation of supervised release is not entitled to all the procedural protections afforded a defendant in a criminal proceeding." Id. at 842. Since this issue was unresolved, it was not at all plain that error occurred when the trial court did not conduct a Faretta hearing. Id. Even assuming error, the court concluded that Crenshaw failed to prove the error affected his substantial rights. To make such a showing, Crenshaw needed to prove that but for the error there was a reasonable probability that the result would have been different. Id. at

---

[2]As this court observed even before trial on the underlying offenses that resulted in the imposition of supervised release, this defendant has been nearly impervious to wise counsel because of his seemingly unshakable confidence in his own knowledge and skill.

7

841. The record did not reveal, and Crenshaw did not explain, how the denial of alternate counsel prejudiced the outcome. Id.

Here, Brennan had the close assistance of court-appointed standby counsel and has failed to demonstrate plain error, that is, error likely to have resulted in a favorable decision. Under these circumstances his appellate counsel's failure to raise this issue on appeal meets neither of Strickland's two-prongs.

### C.

Brennan appears to complain in his third claim that the court improperly imposed consecutive terms of imprisonment "because only a term existed to violate." The court disagrees. When the court first sentenced Brennan on counts one and two, it imposed a three-year term of supervised release on each count. In revoking his supervised release the court had authority to impose consecutive sentences. See United States v. Johnson, 138 F.3d 115, 118-19 (4th Cir. 1998).

### D.

Brennan's fourth claim essentially asserts this court erred in considering as circumstantial evidence Brennan's lack of emotion in speaking with law enforcement about his wife's death. The claim is frivolous.

### E.

For his fifth claim Brennan complains that this court erred in considering as circumstantial evidence the fact that Brennan looked in the trunk of the car for his wife. As the court stated at the revocation hearing: "nothing remotely suggested that his wife might be in the trunk of the car. Yet he looked there. Obviously, this is a highly unusual place to look in the

8

absence of some indicia that he should be looking for his wife in the trunk." (Tr. 26, July 12, 2007.) Simply put, this is another frivolous claim.

### F.

Brennan's sixth claim appears to complain that the government failed to prove specific intent, an element "all felony grades of homicide" in West Virginia. The Court disagrees. Circumstantial evidence fully supports the inference that Brennan intended the natural and probable consequences of his actions.[3] This claim satisfies neither of Strickland's prongs.

### G.

Brennan's seventh claim essentially asserts that he should have been given a continuance to prepare. Counsel claimed on appeal that the court abused its discretion in denying his motion for continuance. Although the claim is based on grounds other than Brennan's alleged lack of preparation, "reviewing courts must accord appellate counsel the 'presumption that he decided which issues were most likely to afford relief on appeal." Bell v. Jarvis, 236 F.3d at 164 (quoting Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993)).[4] Given that the Court of Appeals would have reviewed the issue through the abuse of discretion lens, appellate counsel did not perform deficiently in failing to present the issue on appeal, and there is not a reasonable probability that had counsel presented the issue the outcome of the appeal would have been different.

---

[3]Even if the court had concluded that Brennan was guilty of involuntary manslaughter, a misdemeanor in West Virginia, see W. Va. Code § 61-2-5, and thus a grade B violation, U.S.S.G. § 7B 1.1(a)(2), the court would have so stated and still imposed the same sentence.

[4]This court never believed Brennan was unprepared. Rather, it believed he was stalling. (Tr. 16-17, July 11, 2007.)

9

### H.

For his eighth claim Brennan argues that counsel was ineffective in "pursuing claims on direct appeal without asking for defendant's input." Counsel, not defendant, has the authority to select issues for appeal. Jones v. Barnes, 463 U.S. 745, 752 (1983). Therefore, appellate counsel did not perform deficiently. Moreover, Brennan has identified no issue that would have been likely to change the outcome of his appeal.

### I.

For his ninth claim Brennan complains "that the district court erred by nullifying Fed. R. Crim. P. 49 and 99." His supporting arguments are convoluted and hard of follow. The court notes that it finds nothing in Rule 49 to shed light on the claim, and there is no Rule 99. Brennan supports the claim with the arguments that he was surprised by the evidence and "convicted of [the] uncharged crime of accessory." To the extent that those arguments underpin the claim, counsel raised them on appeal, and the Court of Appeals rejected them. It follows that Brennan can show neither deficient performance nor prejudice.

### III.

For the reasons stated above, Brennan's claim that his court-appointed counsel rendered ineffective assistance in the selection of issues in the appeal of the revocation of his supervised release is meritless and the court denies his motion.

ENTER: This 1st day of December 2008.

UNITED STATES DISTRICT JUDGE

10